**APPLETON ELECTRIC COMPANY et al., Plaintiffs,**

v.

**Robert C. WATSON, Commissioner of Patents, Defendant.**

**Civ. A. No. 3200-54.**

United States District Court for the District of Columbia.

Jan. 29, 1957.

Andrew B. Beveridge, Washington, D. C., Edward W. Osann, Jr., and Leroy W. Mitchell, Chicago, Ill., for plaintiffs.

Samuel W. Cochran, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents under 35 U.S.Code §. 145, to secure an adjudication that the plaintiff is entitled to receive a patent for an invention described in an application of Nils A. Tornblom, Serial No. 789,444, filed on December 3, 1947. The application was denied by the Examiner, whose decision was affirmed by the Board of Appeals of the Patent Office.

The alleged invention is an electric lighting fixture of a type intended for use in hazardous places in which explosive gases might gather. The objective of the invention is to create a lighting fixture that would be explosion proof in the sense that if an explosion occurred inside the fixture the explosion would not be communicated to the outside and the

flame would be contained within the fixture. The inventor seeks to accomplish his objective by using and inserting in his fixture a porous metallic disc or screen, or a series of such discs or screens. It is asserted that in case an explosion occurs inside the fixture these porous metallic elements cause the gases to escape more slowly than they otherwise would and cool them while they are passing through the apertures of the metallic member, thereby preventing the explosion from being communicated to the outside.

The evidence shows that there has been considerable practical exploitation and use of this invention by the plaintiff and that the plaintiff has sold large quantities of fixtures of the type on which a patent is sought. No doubt commercial success is a circumstance to be considered in connection with the question whether invention exists in a new product. This matter, however, is pertinent if the question of invention is a close one but is not determinative or conclusive. It is a well-known fact that many new articles come on the market from time to time that attain a commercial success but which do not rise to the dignity of a patentable invention.

The Patent Office denied the application on the ground that the applicant's device did not represent a patentable advance over the prior art. This brings us to a consideration of the pertinent items of the prior art. They will be considered in chronological order. The first is a patent to Williams, No. 321,166, issued on June 30, 1885. This patent covers safety lamps for use in mines known as Davy lamps. One of the vital features of the invention covered by the Williams patent is a wire gauze cylinder and an additional wire gauze protector in the top of the lamp to afford "safety against a rush of gas at any time into the lamp".

The next item of prior art is a patent to Keil, No. 489,150, issued on January 3, 1893. That patent also covers a lantern for use in mines, specifically, electric lanterns for that purpose. Keil states that one of his objectives was that in case of the breaking or cracking of the bulb, all fear of the igniting of any dangerous gases within the mine should be precluded. He accomplishes his object also by the use of a wire gauze within the lamp. He adds that as it is extremely desirable to prevent the passage of flame from the lantern in case of the ignition of the gases therein, he uses a supplemental gauze cap and so entirely precluding the passage of any such flame or spark in case of the breaking of the bulb and the ignition of any gas within the lantern in consequence thereof. Again, he says, "In case the lantern body should be crushed by any severe accident happening thereto by which the bulb would be cracked or broken, and cause the ignition of any gases which might be within the lantern body by the spark of the incandescent light, all liability of ignition or surrounding gases so as to cause an explosion, would be prevented by the gauze body of the lantern, so that the liability of the ignition of the gases is precluded under any circumstances." It is clear that Keil had the basic idea that has been utilized by the present applicant.

The next item in the prior art is an English patent to Gover, No. 23,369, issued on December 11, 1897. It relates to an improvement in electric safety fuses and states: "The casing of an electric safety fuse is frequently made with an opening for escape of gases when the fuse gives way. Should the fuse happen to be near combustible materials or gases there is danger of these being ignited by the burning of the fuse or the temporary arc produced at the moment of its fusion. The present invention has for its object to provide against this danger, by arranging the fuse and its casing as we shall describe referring to the accompanying drawing." He adds that "the casing has a large opening at the top covered with wire gauze, such as will give a free out-

let for gases under pressure but will prevent communication of flame to the exterior."

The last pertinent item of prior art is a patent to Baker, No. 2,447,048, issued on August 17, 1948. This patent relates to flame arresters and uses a porous metal plate or a deflector inserted in porous material, which will absorb the shock of a backfire and spread the flame of a backfire prior to its entry into the pores of the porous element.

 The Board of Appeals of the Patent Office held that in the light of the disclosures that have just been reviewed the use by the inventor in this case of a rigid porous metal disc or screen, for the purpose heretofore indicated, does not represent a patentable advance, rather than something that could be developed by a person reasonably skilled in the art. This Court agrees with the Patent Office. In any event, the Court concludes that there is a rational basis for the ruling of the Patent Office. Its decisions on technical matters, such as are presented here, are entitled to great weight.

The Court might add that there have been some discussions as to whether the Patent Act of 1952 embodied in Title 35 of the United States Code did not lower the standard of invention. Judge Learned Hand in the case of Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, discusses this question and intimates that perhaps the definition of invention under the present statute, though it is practically the same in phraseology as that under the old statute, is intended to accomplish this result in the requirements as to what constitutes patentability as formulated in decisions of the Supreme Court rendered during the period immediately preceding 1952. This Court has had that possibility in mind but, even under the less rigid standard, the Court is of the opinion that the Patent Office was correct, or at least that it was justified in reaching the conclusion that it did.

Patentability is in part defined at present in 35 U.S.Code § 103, as follows:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

This Court agrees with the ruling of the Patent Office that in the light of the prior art the alleged invention in this case would have been obvious to a person having ordinary skill in the art to which the subject matter of the case is directed.

In view of these considerations, the Court will render judgment for the defendant on the merits.

Counsel may submit proposed findings of fact, conclusions of law, and a judgment.